UNITED STATES of America

v.

Oliyinka SOBAMOWO, Appellant.

Nos. 87–3056, 87–3057, 87–3061
and 87–3062.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 21, 1989.

Decided Dec. 19, 1989.

Ferris R. Bond, Reston, Va. (appointed by this Court), and Jane C. Norman, Washington, D.C., were on the brief for appellant, Francis Sheen in No. 87–3057.

Thomas Lumbard, Washington, D.C. (appointed by this Court), was on the brief for appellant, Victoria Toomer in No. 87–3062.

Per A. Ramfjord, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and William J. O'Malley, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

David P. Nicoli, with whom Geoffrey F. Aronow, Washington, D.C. (appointed by this Court), and Hope O'Keeffe was on the brief, for appellant, Eddie Adair in No. 87–3061.

William A. Schwennesen, with whom George Ruttinger (appointed by this Court), Richard L. Beizer and J. Michael Klise, Washington, D.C., were on the brief, for appellant, Oliyinka Sobamowo in No. 87–3056.

Before RUTH B. GINSBURG and D.H. GINSBURG, Circuit Judges, and FRIEDMAN,* Senior Circuit Judge.

RUTH BADER GINSBURG, Circuit Judge:

Defendants were convicted of conspiracy and related substantive offenses stemming from their involvement in heroin trafficking. The central actor in the case was defendant Eddie Adair, who in 1986 bought heroin in quantity from Nigerian suppliers, including defendants Oliyinka Sobamowo and Francis Sheen. Adair sold the heroin to street-level distributors, including defendant Victoria Toomer. All four defendants, along with two codefendants not appellants here, were convicted of conspiracy to distribute heroin and to possess heroin with intent to distribute it, 21 U.S.C. § 846. Adair was also convicted of distributing heroin and possessing heroin with intent to distribute it, 21 U.S.C. § 841(a), and of aiding and abetting unlawful interstate travel, 18 U.S.C. §§ 2, 1952(a)(3). In addition, Adair, Sheen, and Toomer were convicted of unlawful use of a communication facility, 21 U.S.C. § 843(b).

Defendants, each separately represented by appellate counsel, challenge their convictions on numerous grounds.[1] After full review of each allegation of error, we are satisfied that none merits relief, and therefore affirm the convictions.

## I. WIRETAP EVIDENCE

Sobamowo and Sheen argue that the district court should have suppressed evidence obtained from wiretaps placed on their telephones.[2] Under the federal wiretap autho-

---

* Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The four defendants submitted a joint statement of the case, but each filed a separate brief.

2. Sheen sets forth no independent arguments in support of this challenge, instead incorporating by reference the relevant portions of Sobamowo's brief. See Brief for Appellant Sheen at 36. However, Sobamowo's brief largely restricts its

rization statute, a wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The statute also requires the issuing judge to determine whether an adequate showing of necessity for the wiretap has been made, *see* 18 U.S.C. § 2518(3)(c); a district judge's necessity determination is reviewable for abuse of discretion.

█ Sobamowo first contends that the affidavits submitted to support two successive wiretap orders on his telephone relied on conclusory statements and provided no factual basis for a finding of necessity. Sections of an affidavit framed in conclusory terminology, this court has observed, "cannot rationally be separated from ... preceding detailed descriptions of ... investigative events." *United States v. Williams*, 580 F.2d 578, 589 (D.C.Cir.), *cert. denied sub nom. Lincoln v. United States*, 439 U.S. 832, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978). In this case, the government's conclusions followed upon a detailed description of the course of the investigation and the specific investigative procedures already employed. "[E]xamined as a whole and in a common sense fashion," *United States v. Carneiro*, 861 F.2d 1171, 1177 (9th Cir.1988), the affidavits in question satisfy the legal requirement: they contained facts sufficient to support the district court's necessity determination.

█ Sobamowo further argues, in particular, that the government failed to investigate him adequately before resorting to the wiretap. Rather, Sobamowo contends, the government improperly relied on prior affidavits submitted in conjunction with applications to tap Adair's phones. Circuit precedent clarifies that "a court may authorize the wiretap of the phone of a member of an operation if traditional investigative techniques have proved inadequate to reveal the operation's full 'nature and scope.'" *United States v. Brown*, 823 F.2d 591, 598 (D.C.Cir.1987). Evidence collected by the government and detailed in the Adair affidavits revealed that a conspiracy existed and that Sobamowo was connected with it. While the government appropriately relied on the Adair affidavits to outline the contours of the conspiracy and explain the difficulty of penetrating it by traditional means, the government did not rest at that point. Before seeking to tap Sobamowo's telephone, the government in fact attempted to gather information about him in other ways. *See* Joint Appendix (J.A.) at 322, 324, 326 (use of undercover agents and informers, examination of law enforcement records, surveillance attempts). As Sobamowo's own brief indicates, *see* Sobamowo Br. at 14, 16 n. 10, 18, those efforts included contacting Nigerian sources, checking DEA and FBI records, and conducting physical surveillance of Sobamowo's residence. Considered in conjunction with the earlier investigative efforts described in the Adair affidavits, these attempts to investigate Sobamowo sufficed to justify the district court's wiretap permission.

█ Finally, Sobamowo maintains that the affidavits fatally failed to inform the district court that the government 1) had not awaited the results of a pen register installed on Sobamowo's telephone, 2) had not obtained a clear photograph of Sobamowo, and 3) had missed an opportunity to follow Sobamowo one night after he met with Adair. We find no crucial omission. The government did not falsely state any investigative procedure it in fact employed. Having engaged in an adequate range of investigative endeavors, the government properly sought wiretap permission and was not required to enumerate every technique or opportunity missed or overlooked. We find no cause to believe that the three items Sobamowo now features, if known to

arguments to the facts of that defendant's own case, *see* Brief for Appellant Sobamowo at 13, 17 (Sobamowo Br.), and even suggests that the Sheen wiretap could withstand attack on its

legality. *See id.* at 10, 14. Our discussion of Sobamowo's contentions therefore disposes of Sheen's objection as well.

the district judge, would have altered the district court's determination that a wiretap was necessary. *See United States v. Ippolito*, 774 F.2d 1482, 1485–86 (9th Cir. 1985).

## II. Search Warrant

■■ Sobamowo next contends that the district court erroneously denied his request for a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to test the veracity of an affidavit supporting the warrant to search his apartment. To obtain a *Franks* hearing, a defendant must make an adequately supported claim that the affidavit rests on statements deliberately false or made with reckless disregard for the truth. *See United States v. Richardson*, 861 F.2d 291, 293–94 (D.C.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). Sobamowo failed to meet this test. The affidavit supporting the warrant must be read as a whole and in a " 'sensible, pragmatic' " manner. *Id.* at 293. It is evident, upon such a reading, that the detective who prepared the affidavit was simply summarizing the contents of Sobamowo's recorded conversations and interpreting them, guided by his experience in narcotics investigations, as referring to heroin. The requisite "substantial preliminary showing" of intentional or reckless falsehood, *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77, is utterly lacking here.

## III. Sufficiency of the Evidence

■ Sobamowo, Toomer, and Sheen all challenge the sufficiency of the evidence to support their conspiracy convictions. They claim that the government's evidence proved at most individual buyer-seller relationships between them and Adair. Alternately, they claim that only multiple conspiracies were proven at trial, rather than the single overall plot alleged in the indictment.

Drug distribution enterprises such as this one, involving a "chain" composed of importers, middlemen, and street dealers, have been appropriately tried on a conspiracy theory. *See, e.g., United States v.*

*Douglas*, 874 F.2d 1145, 1151–55 (7th Cir.), *cert. denied sub nom. Pruitt v. United States*, —— U.S. ——, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989) (affirming conspiracy convictions of street-level drug dealers based on evidence of purchases of cocaine on credit from drug distributor); *United States v. Arbelaez*, 719 F.2d 1453, 1457–58 (9th Cir.1983), *cert. denied sub nom. Ponce de Leon v. United States*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984) (affirming conspiracy convictions of drug suppliers who dealt with a common distributor). "Under the chain analysis, the government need not prove a direct connection between all the conspirators. A single conspiracy may be established when each conspirator knows of the existence of the larger conspiracy and the necessity for other participants...." *United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988).

■ From the evidence presented in this case, the jury could have concluded that all three objecting defendants were knowingly involved in a single conspiracy to purchase and distribute heroin. The evidence suggested that Sheen sold heroin to Adair, with payment deferred until Adair could unload the drugs through street dealers. Toomer served as one of those street dealers, to whom Adair supplied heroin to be paid for with street sale returns. Sobamowo initially supplied a sample of heroin to Adair for testing; this act indicated his comprehension that resale might have been contemplated. Sobamowo's efforts to warn another codefendant (not an appellant here) following a search by the police of Sobamowo's apartment further revealed his awareness of the scope and illegal nature of the group's activities. This evidence that the defendants were aware of the structure of the enterprise and the participation of third parties, when viewed in the light most favorable to the government and allowing all reasonable inferences to be drawn to its advantage, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is suffi-

cient to support the convictions.[3] *See Douglas*, 874 F.2d at 1153, 1156–57 (credit sales constituted evidence of participation in drug conspiracy); *United States v. Theodoropoulos*, 866 F.2d 587, 594 (3d Cir.1989) ("conversation concerning a third party's complaint about the quality" of drugs supplied held sufficient to prove drug supplier's knowledge of drug distribution scheme).

### IV. JUROR DISMISSAL

■ All four defendants assert that the district judge's dismissal of a juror after trial commenced constituted reversible error. Seven days into the eight-week trial, and in response to an allegation that Juror 9 might have been using heroin or other narcotics, the district judge conducted a lengthy voir dire of all the jurors. The voir dire revealed no evidence of drug use, but did show that six jurors suspected or had heard rumors of such use, that all but two of the jurors singled out Juror 9 for repeated tardiness, and that several jurors were irritated by Juror 9's lateness. The judge ultimately dismissed Juror 9, telling the jury that the dismissal was "solely as a result of her lateness on several occasions." J.A. at 1033.

The district judge was best positioned to determine whether dismissal of Juror 9 was warranted under the circumstances, and he gave an adequate account of the ground for his decision. We have no basis on this record to second-guess his first-hand determination. *See United States v. Fajardo*, 787 F.2d 1523, 1526 (11th Cir. 1986) (upholding trial judge's dismissal of juror with noisy sinus condition "because the degree of disruption is gauged better by first-hand impressions rather than the review of a cold record"). It is surely not a defendant's constitutional, statutory, or case law entitlement to have, as one appellant urged, a slow poke on the jury. Most critically, as the trial judge indicated, it is highly unlikely that any prejudice resulted from the dismissal of Juror 9. The heightened risk of influencing the verdict that may exist when dismissal of a juror occurs after deliberations have begun, *see* FED.R. CRIM.P. 23(b), was not present here. *Cf. United States v. Essex*, 734 F.2d 832, 842 (D.C.Cir.1984) (dismissal held improper when it occurred after start of deliberations, resulting in 11–member jury, and without a finding of good cause). Nor does this case involve any suspicion of jury tampering. *Cf. United States v. Shapiro*, 669 F.2d 593, 599 (9th Cir.1982) (presumption of prejudice results from allegations of attempted juror buy-off). The matter, in short, fell fully within the district court's sound discretion.

### V. FAILURE TO DISCHARGE ALTERNATES

■ Adair and Sheen also argue that the district court erred fatally in failing to discharge the alternate jurors once the jury began deliberations. The Rule in point,

---

3. Sobamowo and Toomer also argue that the disparity between the evidence against them and that against their codefendants entitled them to separate trials. However, a district court is entrusted with broad discretion in ruling on severance. *See Tarantino*, 846 F.2d at 1398–99. *See also United States v. Sutton*, 801 F.2d 1346, 1365 (D.C.Cir.1986) (as a rule, defendants indicted on the same or related charges should be tried jointly). Particularly in light of our conclusion that the evidence adequately supported the conspiracy convictions of all of the defendants, we find no abuse of discretion in the district court's orders denying severance.

The district court, we further note, did not abuse its discretion in refusing to allow a Nigerian barrister to testify on the meaning of the Yorubian word "obo" and in declining to strike cross-examination testimony of cooperating government witness Nickerson. The barrister and those he surveyed had no experience with narcotics traffickers and the terms of that trade. The notion that Nickerson's credibility was impermissibly "bolstered" is contradicted by a fair, sensible reading of the transcript. Nickerson's statement that he was "ordered by the Court to offer [his] full cooperation," J.A. at 1117, as part of a plea bargain agreement in another case, might simply have reinforced the jury's understanding that Nickerson was testifying out of self-interest. Furthermore, the district judge dispelled any impression of judicial endorsement of Nickerson's credibility by instructing the jury to "weigh [Nickerson's] testimony with extreme caution ..., because of the possibility of [his] special interest in the case and his motive to fabricate." J.A. at 1505. *See United States v. Mealy*, 851 F.2d 890, 900 (7th Cir.1988) (curative instruction rendered harmless any error from bolstering).

Fed.R.Crim.P. 24(c), calls for discharge of alternate jurors "after the jury retires to consider its verdict." None of the defendants objected at trial to the district court's handling of this matter, however. The district judge firmly cautioned both the regular and the alternate jurors not to discuss the deliberations, or indeed any aspect of the case. Nor does the record suggest that any improper communications occurred. There being no reason to think prejudice resulted, any error here was harmless. *See United States v. Reed,* 790 F.2d 208, 210 (2d Cir.), *cert. denied,* 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 393 (1986) (violation of Rule 24(c) does not require reversal absent showing of prejudice).

## VI. EXCLUSION OF DEFENDANTS FROM TAPE REPLAYING

Toomer and Sheen both challenge the district court's refusal to allow them to be present when audio-taped evidence was replayed for the jury during deliberations. They contend that their exclusion violated the sixth amendment confrontation clause, the fifth amendment due process clause, and Fed.R.Crim.P. 43(a), which recognizes the right of a defendant to be present at "every stage of the trial."

▮▮▮ Contrary to defendants' contentions, the tape replaying was not a stage of trial implicating the confrontation clause or Rule 43(a). *See Dallago v. United States,* 427 F.2d 546, 552–53 (D.C.Cir.1969) (defendant's presence not required when exhibits are submitted to the jury during deliberations). Nor did defendants' exclusion violate the due process clause: their absence had no " 'relation ... to the fulness of [their] opportunity to defend' " themselves. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985).[4] Moreover, the tape replaying occurred under the watchful eyes of the district judge and counsel for several defendants, consistent with an arrangement proposed by the district judge and accepted by defense counsel.[5] Any error was therefore harmless beyond a reasonable doubt. *Cf. United States v. Kupau,* 781 F.2d 740, 743 (9th Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986) (even where tape-playing government agent and jury were alone in the courtroom, error found harmless beyond reasonable doubt given "the obvious efforts of the court, by clearing the courtroom, to prevent any outside influences, and the absence of any suggestion that extraneous matters came before the jury").

## VII. JURY INSTRUCTIONS

▮▮▮ Adair, Toomer, and Sheen all assert that the trial judge erroneously instructed the jury as to the elements of unlawful use of a communication facility under 21 U.S.C. § 843(b). Because no objection to the instruction was made at trial, plain error must be found in order to warrant reversal on this ground. To prove a section 843(b) violation, the government must establish "(1) a knowing or intentional (2) use of a communication facility ... (3) to facilitate the commission of a drug offense." *United States v. McGhee,* 854 F.2d 905, 908 (6th Cir.1988).

▮▮▮ Defendants argue that the district court failed adequately to notify the jury that the government was required to prove beyond a reasonable doubt that the drug offenses underlying the telephone facilitation charges were actually committed. *See United States v. Dotson,* 871 F.2d 1318, 1323 (6th Cir.1989) (reversing section 843(b) conviction when "a rational juror easily could have found, beyond a reason-

---

**4.** Defendants do not claim, nor does the record suggest, that the district judge in any way impeded trial counsel from attending the tape replaying sessions and vigilantly protecting the interests of their clients.

**5.** Under that arrangement, at least one defense counsel was to attend each tape replaying session. The record indicates, however, that counsel for at least three defendants, including defendant Toomer, were present when the tapes were replayed. Contrary to defendant Toomer's suggestion, the government does not bear the burden of showing who was present during the replaying sessions or demonstrating that no untoward communications occurred. Trial counsel for each defendant knows best whether counsel was present and, if counsel was absent, the reason why.

able doubt, that [defendant] used her telephone 'to facilitate the commission' of a drug offense without finding that the offense actually was committed"). The relevant instruction stated:

> [T]he essential elements of the offense of illegal use of a communication facility, which the government must prove beyond a reasonable doubt, are ... second, that the defendant used the communication facility to facilitate an unlawful conspiracy to distribute and possess with intent to distribute heroin, or to facilitate the unlawful, knowing and intentional distribution of heroin....

J.A. at 1508.

■ This instruction conveyed that, to convict, the jury would have to find that use of the telephone actually facilitated (not merely aimed to facilitate) the underlying offenses. In this case, the jury necessarily found beyond a reasonable doubt that the underlying offenses were committed because it convicted some or all of the defendants of those very offenses. *See United States v. Jefferson*, 714 F.2d 689, 698 (7th Cir.1983) (telephone facilitation convictions upheld despite failure to instruct jury that underlying offenses must be completed when instructions referred to offenses charged elsewhere in indictment); *cf. Dotson*, 871 F.2d at 1326 (Guy, J., dissenting) (underlying offenses not charged separately). Especially in view of defendants' failure to object to the instruction at trial, reversal is not warranted on this ground.[6]

## VIII. AMENDMENT OF INDICTMENT

■ Finally, Adair contends that his conviction on Count 18 of the indictment, a telephone facilitation charge, should be reversed because the count failed to state an essential element of the offense. During their deliberations, the jurors noticed that Count 18 alleged that Adair "did is, a telephone, to facilitate an unlawful conspiracy

...," *see* Joint Statement of the Case for Appellants at 32; the statutory words "knowingly and intentionally use a communication facility, that" had been omitted between "did" and "is." The jurors asked the judge to clarify what " 'appears to be a typographical error.' " J.A. at 1549. The judge then sent a corrected version of the count back to the jury.

As the jury recognized and as inspection of the indictment reveals, the omission was an obvious typographical slip. The missing language had appeared correctly in the four other telephone facilitation counts directly preceding Count 18. "[T]he settled rule in federal courts ... permits changes in indictments that are merely 'a matter of form' or which correct insignificant clerical errors.... An amendment of form and not of substance occurs when the defendant is not misled in any sense, is not subjected to any added burden and is not otherwise prejudiced." *United States v. Kegler*, 724 F.2d 190, 194 (D.C.Cir.1984). That Adair was not misled, burdened, or otherwise prejudiced is apparent from his counsel's failure even to remark on the mistake until the jury did. Presumably, Adair and his counsel simply equated Count 18 with the multiple other correctly stated telephone facilitation charges facing Adair at trial. Again, any error was harmless.

### CONCLUSION

For the foregoing reasons, we reject appellants' challenges. Satisfied that defendants were fairly tried and that the proof adequately supported the verdicts, we affirm the convictions.

*It is so ordered.*

---

**6.** Toomer also asserts that the judge failed to instruct the jury that specific intent to further the underlying crimes was an element of the telephone facilitation charges. However, the judge told the jury that it must find that "the defendant used the communication facility to facilitate" specific unlawful acts and that "the defendant's use ... was knowing and intentional." J.A. at 1508–09. Considered as a whole, the instructions adequately conveyed the requisite information.