# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 11, 2010                    Decided April 16, 2010

No. 09-3016

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES BECTON, ALSO KNOWN AS FUNK, ALSO KNOWN AS P,
ALSO KNOWN AS PUMPKIN,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00131-JR-1)

———

*Stephen C. Leckar*, appointed by the court, argued the cause and filed the briefs for appellant.

*SuzAnne C. Nyland*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roy W. McLeese III*, *John P. Mannarino*, *Arvind K. Lal*, and *Matthew P. Cohen*, Assistant U.S. Attorneys.

Before: ROGERS and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  Appellant James Becton was sentenced to 300 months in prison after a jury convicted him of conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base ("crack"), five kilograms or more of cocaine, and cannabis, along with ten counts of unlawful use of a communication facility to facilitate the conspiracy.  In this appeal, Becton challenges (1) the District Court's denial of his motion to suppress evidence obtained from a series of wiretaps placed on his and his charged co-conspirators' cell phones; (2) the District Court's refusal to hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), regarding the prosecution's alleged failure to disclose certain information bearing on the credibility of two confidential sources that it relied on in affidavits supporting the wiretap applications; and (3) the District Court's denial of his motion for a new trial.  In the new trial motion, Becton argued that the District Court improperly admitted testimony pertaining to his activities while incarcerated from 2003 to 2005 on an unrelated charge and that it improperly allowed the Government to inform the jury in its rebuttal closing argument that Becton had also been in prison between 1995 and 2000.  The District Court rejected both arguments, and Becton now raises them again before this court.

We affirm the District Court's rulings.  First, we hold that the District Court did not abuse its discretion in approving the prosecution's use of wiretaps to uncover the "full nature and scope" of the conspiracy.  *See United States v. Sobamowo*, 892 F.2d 90, 93 (D.C. Cir. 1989) (internal quotation marks omitted). Second, we find that the trial court did not err in failing to hold a *Franks v. Delaware* hearing, since the information appellant asserts was omitted from the affidavits was not material. Finally, the District Court did not abuse its discretion in denying the motion for a new trial, because it properly admitted the testimony pertaining to Becton's incarceration from 2003 to 2005 as direct evidence of the charged offense, *see United States*

*v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000), and correctly determined that Becton did not suffer "substantial prejudice" from the prosecutor's improper remark in rebuttal closing argument, *see United States v. Childress*, 58 F.3d 693, 715 (D.C. Cir. 1995) (per curiam) (internal quotation marks omitted). Accordingly, we affirm.

## I. BACKGROUND

In 2001, the FBI began investigating drug trafficking on the 4200 and 4300 blocks of Fourth Street, S.E., in Washington, D.C. According to the Government, appellant James Becton and his brother Willie Best led a "violent, narcotics trafficking organization," Counts Aff. ¶ 15 (Oct. 2005), *reprinted in* 1 Appendix to Brief of Appellant Becton ("A.A.") 327 ("Counts Oct. Aff."), supplying large quantities of drugs (primarily cocaine, crack, and marijuana) to their underlings and overseeing the drug sales that occurred in this area. Although the Government's investigation slowed due to "staffing and resource changes at the FBI" after the last of a series of controlled purchases occurred in June 2002, the investigation "resumed in earnest in 2004." Government's Omnibus Resp. to Def. James Becton's Pretrial Mots. at 5-6 (May 30, 2008), *reprinted in* 1 A.A. 152-53. Among other endeavors, the Government seized crack cocaine from a car parked by Best and an associate in Washington, D.C.; obtained a pen register for the cellular telephone of Fred Mercer, a member of Becton and Best's organization; executed a controlled buy using an informant; and recorded several telephone conversations between Mercer and the informant.

On September 27, 2005, the FBI sought and obtained authorization to wiretap Mercer's cellular telephone. Agent Mary Counts submitted a 49-page affidavit seeking to intercept wire communications to and from this telephone by a number of purported conspirators, including Becton. *See* Counts Aff. (Sept. 2005), *reprinted in* 1 A.A. 260-308 ("Counts Sept. Aff.").

Counts' affidavit provided detailed information about Best and Becton's operation as revealed by three confidential informants, identified as S-1, S-2, and S-3 to protect the sources from retribution. Two of these informants were incarcerated at the time Counts applied for the wiretap. Counts additionally described several seizures and undercover operations that took place in 2003 and 2005 and set forth data obtained pursuant to a pen register for the targeted telephone.

In the September 2005 affidavit, Counts stated her belief that "the interception of wire communications" was the "only available investigative technique . . . to establish the full scope and nature" of the conspiracy. Counts Sept. Aff. ¶ 68, 1 A.A. 296. She averred that "[n]ormal investigative procedures" had been tried and "failed, appear[ed] reasonably unlikely to succeed if tried or continued, or [were] too dangerous to employ." *Id.* ¶ 69, 1 A.A. 296. Although the FBI had employed surveillance, undercover officers, confidential sources, interviews and pen registers, made controlled purchases through cooperating witnesses, and reviewed calling data and public records, Counts averred that these investigative techniques had failed to establish, *inter alia*, the identities of the persons who supplied the cocaine and crack cocaine, the identities of the persons who transported drugs into the District of Columbia for distribution by the identified co-conspirators, the identities of other persons who assisted with the distribution of the drugs, the manner and frequency with which the co-conspirators transported drugs into D.C., and the locations where they stored their contraband. *Id.* ¶ 69, 1 A.A. 296-97. Counts explained in detail the conventional investigative techniques employed, the evidence (or lack thereof) revealed by each method, and why further use of each technique would not reveal the identity of all members of the conspiracy, the manner in which the co-conspirators distributed drugs, or the manner in which they distributed the proceeds of their operation. For example, three previous search warrants yielded "limited to no evidence," as sources later

revealed that Best and Becton had been forewarned that law enforcement action would take place at certain locations and moved their contraband. *Id.* ¶ 76, 1 A.A. 301-02.

From the September 2005 wiretap of Mercer's phone, the FBI identified a cellular telephone number for Becton and obtained authorization to wiretap this phone from October 27, 2005 to November 25, 2005. After a second wiretap of Mercer's phone revealed a telephone number for Willie Best, the FBI applied for and received authorization in January 2006 to wiretap Best's phone for 30 days, later reauthorized for a second 30-day period. In the January 2006 application for a wiretap on Best's phone, Counts' affidavit described six confidential sources. *See* Counts Aff. ¶¶ 21-59 (Jan. 2006), *reprinted in* 1 A.A. 199-210 ("Counts Jan. Aff."). The three confidential sources that had not appeared in previous wiretap applications were stated to have begun their cooperation with the FBI in March 2005 (S-4), November 1996 (S-5), and April 2002 (S-6), and were thus working with the FBI at the time it applied for the first wiretap in September 2005. However, all three sources were incarcerated at the time the initial wiretap application was made. After obtaining these six wiretap authorizations, the FBI executed a series of search warrants on May 22, 2006 and May 23, 2007, the latter being the date of the case "take down." Government's Notice of Intrinsic Evidence at 4 (Apr. 18, 2008), *reprinted in* 1 A.A. 91.

A grand jury charged Becton and ten others with conspiracy to unlawfully, knowingly, and intentionally distribute and possess with intent to distribute (1) fifty grams or more of crack; (2) five kilograms or more of cocaine; and (3) cannabis. Becton was also charged with numerous counts relating to the unlawful use of a telephone to facilitate the conspiracy in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Charged co-conspirator Willie Best moved to suppress evidence obtained from the six 30-day periods of wiretap surveillance authorized on September

27, 2005 (Mercer's phone); October 27, 2005 (Becton's phone); December 16, 2005 (second wiretap of Mercer's phone); January 27, 2006 (Best's phone); February 24, 2006 (second wiretap of Best's phone); and April 4, 2006 (three additional phones used by Becton). Among other arguments, Best claimed that the Government's wiretap applications had not satisfied the necessity threshold of 18 U.S.C. § 2518, and asked for a *Franks v. Delaware* hearing, *see* 438 U.S. at 155-56. Appellant filed a supplemental memorandum in support of Best's motion to suppress electronic surveillance, adopting Best's arguments and elaborating on the necessity argument. The District Court heard argument on the motion to suppress in July 2008 and orally denied the motion. Tr. of Hearing (July 23, 2008) at 17, 2 A.A. 453.

Becton's trial proceeded from September 15, 2008 to September 30, 2008. The jury found Becton guilty of conspiracy and ten counts of unlawful use of a telephone to facilitate the conspiracy in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. It acquitted Becton of several other telephone counts.

Becton moved for a new trial, arguing that the District Court (1) improperly admitted the prosecution's evidence of his actions while he was incarcerated from 2003 to 2005, including his receipt of drugs and a cell phone while at the correctional facility, and (2) improperly permitted the prosecution in its rebuttal closing argument to inform the jury that Becton was incarcerated between 1995 and 2000. The District Court denied the motion, finding that Becton's activities while incarcerated were "relevant to the existence and/or continuing operation of the charged conspiracy and probative of Becton's participation in it." *United States v. Becton*, Crim. No. 07-0131, Memorandum Order at 6 (D.D.C. Feb. 11, 2009), *reprinted in* 1 A.A. 421 ("Mem. Order"). The District Court ruled that "[t]his was not Rule 404(b) evidence; it was evidence intrinsic of the

conspiracy," because the testimony established that even during his incarceration, Becton exerted significant influence and control over the drug sales business on Fourth Street S.E., and established the beginning of a long-term drug-dealing relationship between Becton and one of the witnesses. *Id.* The District Court further found that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *Id.* at 7, 1 A.A. 422. The District Court found that it had erred in permitting the Government's reference to Becton's 1995 to 2000 incarceration in rebuttal closing argument, but held that the error was harmless. *Id.* at 10-12, 1 A.A. 425-27.

Becton appeals his conviction, challenging the District Court's denial of his motion for a new trial as well as its earlier denial of his motion to suppress evidence obtained through wiretaps.

## II. ANALYSIS

### A. *Standard of Review*

This court reviews the District Court's determination that the Government adequately demonstrated necessity to wiretap for abuse of discretion. *Sobamowo*, 892 F.2d at 93.

"The circuits are split on the question whether a district court's decision not to hold a *Franks* hearing is reviewed under the clearly erroneous or *de novo* standard of review." *United States v. Dale*, 991 F.2d 819, 843-44 n.44 (D.C. Cir. 1993) (per curiam). "We have not definitively resolved the issue in this circuit," *id.*, and it is unnecessary for us to do so in this case. A movant seeking to obtain a *Franks* hearing "must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988) (per curiam) (citing *Franks*,

438 U.S. at 155-56). "To mandate an evidentiary hearing," the movant's attack on the affidavit supporting the warrant "must be more than conclusory." *Franks*, 438 U.S. at 171. On the record in this case, whether the District Court's decision not to hold a *Franks* hearing is reviewed *de novo* or under the clearly erroneous standard, we find no merit in Becton's challenge.

We review the denial of a motion for a new trial for abuse of discretion. *See Morgan v. District of Columbia*, 824 F.2d 1049, 1063 (D.C. Cir. 1987). Becton makes two arguments challenging the denial of the motion for a new trial: (1) the District Court improperly admitted inadmissible character evidence pertaining to Becton's conduct while in prison from 2003 to 2005, and (2) the District Court improperly allowed the Government to reference a separate period of incarceration in its rebuttal closing argument. Becton did not forfeit his argument regarding the admission of the 2003 to 2005 prison evidence and our review is therefore not for plain error as the Government suggests. *See* Government's Br. at 40-41.

Federal Rule of Evidence 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. District Court determinations on relevancy are reviewed for an abuse of discretion. *United States v. Askew*, 88 F.3d 1065, 1074 (D.C. Cir. 1996).

Federal Rule of Evidence 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide

> reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). A claim that a district court improperly admitted evidence under Rule 404(b) is ordinarily reviewed for abuse of discretion. *United States v. Pettiford*, 517 F.3d 584, 588 (D.C. Cir. 2008). In this case, the District Court ruled that the evidence regarding Becton's activities while in prison was relevant and "not Rule 404(b) evidence," because it was intrinsic to the alleged conspiracy. Mem. Order at 6, 1 A.A. 421. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Becton argued to the District Court that the disputed evidence was prejudicial and should be excluded under Rule 403. We review for abuse of discretion when a trial judge has admitted evidence "after having weighed its 'probative value' against the danger it raised of 'unfair prejudice, confusion of the issues or misleading the jury.'" *United States v. Earle*, 375 F.3d 1159, 1163 (D.C. Cir. 2004) (quoting *United States v. Long*, 328 F.3d 655, 662 (D.C. Cir. 2003)); *see also United States v. Shea*, 159 F.3d 37, 39 (1st Cir. 1998) (applying Rule 401 and 403 analyses to review the admissibility of evidence that was not Rule 404(b) evidence but was intrinsic of the charged crime). If a district court does not abuse its discretion in admitting challenged evidence, it does not abuse its discretion denying a motion for a new trial founded upon a challenge to the admissibility of that evidence. *See Morgan*, 824 F.2d at 1064.

Finally, "even where challenges to a prosecutor's closing argument have been preserved through timely objection, we will reverse a conviction and require a new trial only if we determine

that the defendant has suffered substantial prejudice." *Childress*, 58 F.3d at 715 (internal quotation marks omitted).

**B.** ***The Motion to Suppress Evidence Obtained Through Wiretapping***

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, permits a district court to approve an application for the interception of certain wire, oral, or electronic communications. *Id.* § 2518. On the basis of facts submitted in the Government's application to wiretap,

> the district court may authorize a wiretap upon finding that (1) probable cause exists to believe that an individual has committed or is about to commit one of certain enumerated offenses; (2) probable cause exists to believe that "particular communications concerning that offense will be obtained" through an interception; (3) "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried"; and (4) probable cause exists to believe that the communication facility sought to be wiretapped "[is] being used, or [is] about to be used, in connection with the commission of [the] offense."

*United States v. Carter*, 449 F.3d 1287, 1292 (D.C. Cir. 2006) (quoting 18 U.S.C. § 2518(3)(a-d)). An "aggrieved person" – any "person who was a party to any intercepted wire . . . communication or a person against whom the interception was directed," 18 U.S.C. § 2510(11) – may move to suppress the contents of the wire communication. *Id.* § 2518(10)(a). Becton, an aggrieved person, now appeals the denial of his motion to suppress evidence obtained through wiretapping.

### 1. *Necessity to Wiretap and Use of the Information Obtained*

Appellant first argues that the District Court abused its discretion in finding that the Government satisfied the

"necessity" requirement for wiretapping in its September 2005 application. In particular, he asserts that the Government (1) failed to exhaust conventional investigative techniques before seeking authorization to wiretap, and (2) failed to disclose three informants who were working with the Government when it submitted its first wiretap application. We find neither argument persuasive. We therefore hold that the District Court did not abuse its discretion in finding that the Government met the necessity requirement of Title III. *See* 18 U.S.C. § 2518(3)(c).

This court has previously held that the District Court may authorize a wiretap on the phone of a member of a suspect operation if traditional investigative techniques have proved inadequate to reveal the operation's "'full nature and scope.'" *See, e.g.*, *Carter*, 449 F.3d at 1294 (quoting *Sobamowo*, 892 F.2d at 93)); *United States v. Brown*, 823 F.2d 591, 598 (D.C. Cir. 1987) (internal quotation marks omitted). As in *Carter*, where law enforcement infiltration by normal investigative techniques was unlikely to succeed because the defendant dealt with a small circle of street-level drug dealers, 449 F.3d at 1294, Agent Counts' affidavit in this case likewise explained that Becton and Best's drug redistribution operation was "extremely close-knit, involving close associates and family, and . . . very carefully managed, compartmentalized, and operated so as to minimize [the target's] contacts with other co-conspirators." Counts Sept. Aff. ¶ 71, 1 A.A. 299. Agent Counts also averred that physical surveillance had been conducted but "yielded little valuable information . . . other than confirming that some of the identified members of the conspiracy associate with one another." *Id.* ¶ 74, 1 A.A. 300; *see also Carter*, 449 F.3d at 1294 (describing the failure of physical surveillance). Although normal investigative procedures "ha[d] been probative in proving that an ongoing illegal narcotics business [wa]s operating," the FBI had been unable to determine the identities of other co-conspirators who supplied and transported drugs into

D.C. and who assisted in local redistribution using these methods.  Counts Sept. Aff. ¶ 69, 1 A.A. 296-97.  The FBI additionally could not determine through normal investigative procedures the manner and frequency with which co-conspirators transported drugs into the District of Columbia, the quantities and prices of those drugs, and the location where the contraband was stored, among other information. *See id.*  Like the affidavit in *Brown*, Counts' affidavit demonstrated that "traditional investigative techniques had yielded some evidence" against the co-conspirators but did not disclose – and would likely continue to fail to disclose – "the full nature and extent of the conspiracy." *Brown*, 823 F.2d at 598.

Counts' affidavit stated that further controlled drug purchases, either by the one confidential informant not incarcerated or by an undercover officer, would not lead to sufficient evidence as to (1) the manner by which co-conspirators redistributed large quantities of illegal drugs in D.C.; (2) the identities of all members of the organization assisting Mercer, Becton, and the others; and (3) the manner in which the co-conspirators disposed of the proceeds of the operations. Counts Sept. Aff. ¶ 71, 1 A.A. 298-99. Specifically, the affidavit stated that even if S-1, the unincarcerated informant, made additional controlled buys, S-1 would not be able to find out the organization's source of supply. *Id.*

We disagree with Becton's claim that various omissions from the wiretap affidavits undermined the Government's necessity showing.  The Government's omission of information that a previous search had yielded incriminating information did not make its affidavit infirm.  The affidavit explained in detail why searches were "inadequate to penetrate [the] conspiracy," so the contested information was not material. *Carter*, 449 F.3d at 1294; *see also* Counts Sept. Aff. ¶¶ 76-77, 1 A.A. 301-02. Furthermore, the omission of this information did "not undercut the fact that the government had 'engaged in an adequate range

of investigative endeavors,'" *Carter*, 449 F.3d at 1294 (quoting *Sobamowo*, 892 F.2d at 93), including at least three previous searches that yielded "limited to no evidence," *see* Counts Sept. Aff. ¶ 76, 1 A.A. 301-02.

The disputed omission of three cooperating witnesses from the Government's first affidavit was not material, because it did not "undermine the government's ability to prove the need for the . . . wiretap." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005). Agent Counts' affidavit demonstrated that additional controlled buys were inadequate to reveal the "full nature and scope" of the conspiracy. *Sobamowo*, 892 F.2d at 93 (internal quotation marks omitted); *see* Counts Sept. Aff. ¶¶ 70-71, 1 A.A. 298. More significantly, the additional informants could not have made controlled buys, as they were incarcerated at the time when the FBI submitted the September and October 2005 applications for wiretaps.

Becton also asserts that the evidence gained from these wiretaps should have been disregarded for failure to meet the necessity requirement and that the later affidavits do not support probable cause without that information. *See* Appellant's Br. at 52. For the reasons already explained, the District Court did not abuse its discretion in authorizing the September and October wiretaps, so the information from those wiretaps need not have been disregarded.

Because the Government's affidavits adequately demonstrated the failure of normal investigative techniques to reveal the full nature and scope of the conspiracy, the District Court did not abuse its discretion in finding that the Government had met the necessity requirement of 18 U.S.C. § 2518.

2. *Denial of a* Franks *Hearing*

Becton also argues that the District Court erred when it refused to grant a *Franks* hearing with respect to the Government's failure to disclose certain information bearing on

the credibility of two confidential sources, S-4 and S-6, who were cited in the January and February 2006 affidavits supporting wiretap applications. *See* Appellant's Br. at 52-54. We agree with Becton that his claim was raised and preserved when he requested a *Franks* hearing as part of the motion to suppress and the District Court denied that motion without holding such a hearing. However, because Becton failed to demonstrate that the omitted information was material, we hold that the District Court did not err in failing to hold a *Franks* hearing. *See Franks*, 438 U.S. at 171-72; *see also Richardson*, 861 F.2d at 293, 294.

The inclusion of additional information bearing on the credibility of S-4 and S-6 would not have "defeat[ed] probable cause" for the wiretap. *See United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008) (internal quotation marks omitted). Agent Counts had already disclosed that these sources had extensive criminal histories, so the District Court was aware of information undercutting their credibility when it approved the wiretaps. Furthermore, even if the omitted information concerning S-4 and S-6 completely undermined their credibility such that the information relating to them was deemed unreliable and struck entirely from the affidavit, Becton does not show that probable cause would have been defeated. *See Franks*, 438 U.S. at 156. Counts' January 2006 affidavit contained information from four other confidential informants and described undercover operations involving consensually recorded conversations and controlled purchases, all of which demonstrated probable cause that the targeted individuals were involved in a drug-trafficking conspiracy.

On this record, we hold that the District Court did not err when it refused to grant a *Franks* hearing.

## C. *The Motion for a New Trial*

Finally, the District Court did not abuse its discretion in denying Becton's motion for a new trial. Becton argues that testimony pertaining to his conduct while incarcerated from 2003 to 2005 on an unrelated offense should have been excluded as inadmissible character evidence under Federal Rule of Evidence 404(b). We disagree. The District Court correctly held that this "was not Rule 404(b) evidence." *See* Mem. Order at 6, 1 A.A. 421. Rather, the evidence that Becton continued to manage the drug operation on Fourth Street S.E. while incarcerated constitutes direct evidence of his continuing participation in the charged conspiracy and is therefore "properly considered intrinsic" evidence outside the scope of Rule 404(b). *See Bowie*, 232 F.3d at 929; *see also United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003).

The District Court additionally did not abuse its discretion in determining that "the danger of unfair prejudice" did not "substantially outweigh[]" the probative value of the disputed evidence. FED. R. EVID. 403; *see* Mem. Order at 7, 1 A.A. 422. Both the prosecution and the defense at other points in the trial had mentioned without objection that Becton had been previously incarcerated. Mem. Order at 7, 1 A.A. 422. Because the District Court did not abuse its discretion in admitting this testimony, it did not abuse its discretion in denying the motion for a new trial.

Nor did the District Court abuse its discretion in denying the motion for a new trial after Becton challenged the prosecutor's rebuttal closing argument reference to Becton's incarceration from 1995 to 2000. The challenged remark was error, as the District Court found, *see* Mem. Order at 10, 1 A.A. 425, because "it constituted a statement of fact to the jury not supported by proper evidence introduced during trial," *United States v. Gartmon*, 146 F.3d 1015, 1025 (D.C. Cir. 1998) (internal quotation marks and brackets omitted). However, we

agree with the District Court that the error was harmless. *See United States v. Donato*, 99 F.3d 426, 432 (D.C. Cir. 1996) ("In order to warrant reversal, an improper prosecutorial remark must cause substantial prejudice to the defendant."); *Childress*, 58 F.3d at 715 ("substantial prejudice" standard applicable even where challenges to prosecutor's closing argument have been preserved through timely objection).

The District Court properly applied the three factors used to determine whether improper remarks by the prosecutor sufficiently prejudice a defendant so as to warrant reversal: (1) the closeness of the case; (2) the centrality of the issue affected by the error; and (3) the steps taken to mitigate the error's effects. *See Childress*, 58 F.3d at 715; *see also id.* at 715-16 (alternately describing factors as the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper remarks). The brief remark from the prosecutor regarding a prior period of incarceration obviously caused some prejudice to Becton, particularly when the jury had already heard in great detail about at least one other prior period of incarceration. However, as the District Court found, Becton's activities from 1995 to 2000 were not "central issues because the prosecution's evidence and argument focused almost exclusively on events that occurred after he was released." Mem. Order at 11, 1 A.A. 426. The District Court permitted the remark, albeit erroneously, only in response to Becton's counsel's closing argument reference to the Government's lack of evidence between 1995 and 2001. And, contrary to appellant's assertion, the District Court did adopt measures to cure the misconduct, instructing the jury that the arguments and statements of the lawyers were not in evidence. *See id.* at 11-12, 1 A.A. 426-27. Finally, this case was not close: Appellant's participation in the conspiracy was established by numerous witnesses and by intercepted conversations in which the jury heard appellant himself repeatedly directing the supply

and distribution of narcotics. In light of these considerations, we agree with the District Court that the error was harmless.

### III. CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.