# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 11, 2014          Decided June 6, 2014

No. 13-3047

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL MATTHEWS, ALSO KNOWN AS MICHAEL GARY
MATHEWS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cr-00066-1)

*Jenifer Wicks*, appointed by the court, argued the cause and filed the briefs for appellant.

*L. Jackson Thomas II*, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were *Ronald C. Machen Jr.*, U.S. Attorney, *Elizabeth Trosman* and *Anthony Scarpelli*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, WILKINS, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Michael Matthews was tried and convicted for unlawful possession with intent to distribute fifty grams or more of methamphetamine. The district court entered a judgment sentencing Matthews to a period of incarceration, followed by supervised release. Matthews appeals from that judgment, arguing that the district court erred in denying his motion to suppress evidence seized as a result of a search warrant and in not granting the defense a "Franks hearing" on the suppression issue. Because we conclude that any error by the district court does not warrant reversal, we affirm the judgment before us.

## BACKGROUND

On December 2, 2011, officers of the District of Columbia Metropolitan Police Department ("MPD") and the United States Drug Enforcement Administration executed a search warrant obtained from the Superior Court of the District of Columbia for the defendant's apartment. During the search, the officers seized methamphetamine, cash, and various items of drug paraphernalia. Following his arrest and the waiver of his Miranda rights, Matthews was interviewed by an MPD officer and admitted his possession of methamphetamine for distribution.

The United States obtained a single-count indictment charging appellant with unlawful possession of fifty grams or more of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(b)(1)(A)(viii). Appellant moved to suppress the tangible evidence seized in the search and the statements obtained from him after the search, claiming they resulted from a warrant issued without probable cause. The district court, after reviewing the submissions of the parties and the affidavit upon which the issuance of the warrant was based, denied the motion without an evidentiary hearing. The case

proceeded to a bench trial, in which the defense renewed the motion to suppress, which was again denied.  At the close of all evidence, the court found the defendant guilty and thereafter entered a sentence of confinement for 120 months, followed by a five-year period of supervised release.

Defendant appeals, alleging error in the denial of the motions to suppress the evidence, and in the failure of the court to provide a hearing on the suppression motion, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  For the reasons set forth below, we affirm the judgment of the district court.

## ANALYSIS

Both issues in the case concern a Superior Court search warrant issued upon the affidavit of a Metropolitan Police officer.  That affidavit, and therefore the search warrant, depended almost entirely upon information obtained from "an individual," whom the officer referred to as "my 'source.'"  While the affidavit disclosed that the affiant knew the identity of the source, in order to protect the source from harm, the officer did not use the source's name, and indeed, avoided the use of gender-specific pronouns, consistently referring to the source as "it."  While we will not set forth the affidavit in its entirety, an understanding of the issues in this case requires a substantial disclosure of its language:

> The source . . . stated that it knew of a person whose name it gave me, which I am indicating here as "MM" or M------M------.   I am doing that to be certain that this person's name is not used in full in a public document until after it has been charged.  My source told me that MM has been selling large quantities of methamphetamines in mid-town Washington, D.C., for well more than three years.  My source told me that it had itself bought large amounts of

methamphetamines regularly from MM at MM's home at apartment number two at 1500 Massachusetts Avenue, N.W., and had seen MM sell quantities of methamphetamine to other persons in this apartment being sold by an occupant of 901 S Street N.W., Washington, D.C. According to the source, MM sells methamphetamine to support itself and runs this illegal business from its home, which is the apartment for which I seek a warrant. The source has known MM for more than three years and during that time has never known MM to hold any employment other than selling illegal drugs.

The affiant further declared:

To corroborate this information, I went to 1500 Massachusetts Avenue, N.W., and spoke to persons engaged in managing the apartment building. They showed me the name of the person who is the tenant in apartment number two. That name is the same as given me by my source and is the same one I mean when I say MM in the preceding paragraph.

The officer also swore that "[i]n addition to the corroboration" of the name and address information, he believed the information to be reliable and accurate for several reasons. For example, he knew that the source had recently been found to be in possession of a quantity of methamphetamine in "its" residence. He, the officer, also knew that methamphetamine use in Washington, D.C., was concentrated in a certain area of town, within which the address lay. He independently knew that his source was familiar with buyers and sellers of methamphetamine. He also noted that his source was not "working off a beef," but was trying to get "a break" from the police or the prosecutor's office.

On the day after the warrant issued, Metropolitan Police Department officers and United States Drug Enforcement agents executed the warrant at Apartment 2, 1500 Massachusetts Avenue, NW, the premises named in the warrant. The search resulted in the seizure of crystal methamphetamine from a Rubbermaid container, a hall closet, a vacuum-sealed bag found in a safe in the apartment, and a plate in the apartment's bedroom. Additionally, the officers seized suspected crystal-methamphetamine residue from ziploc bags in the bedroom, $6108 in cash found inside the safe, and additional cash from appellant's person. They also found a currency counter in the livingroom, a supply of $1000 money wrappers, ziploc bags, "cups with residue," and digital scales in the hall closet, as well as empty ziploc bags, a Tupperware container filled with unused ziploc bags, small glass vials, various ziploc bags with different colored name markings on them, and syringes that were located in the bedroom closet.

In addition to the indicia of methamphetamine trade, the searching officers seized evidence connecting Matthews with the address. This evidence included mail, a United States passport, a certificate from the Department of Health, and a title issued by the District of Columbia—all bearing appellant's name— as well as appellant's checkbook.

The officers arrested Matthews and advised him of his Miranda rights. Matthews waived his rights and was interviewed by the officer who had obtained the search warrant. In that interview, Matthews admitted that he possessed the methamphetamine for distribution.

The admissibility of all the incriminating evidence against appellant depends upon the validity of the search. The methamphetamine and other physical evidence was seized under the warrant. The confession appears to be the fruit of that tree,

which appellant contends is poisonous. *See Wong Sun v. United States*, 371 U.S. 471 (1963). His appeal questions both the sufficiency of the showing of probable cause on which the warrant is based, and the district court's denial of his suppression motion without an evidentiary hearing which, he contends, deprived him of a safeguard to which he was entitled.

### A. *Probable Cause*

The Fourth Amendment to the Constitution protects the people from "unreasonable searches and seizures," and requires that "no Warrants shall issue, but upon probable cause . . . ." U.S. Const. Amend. IV. By the terms of the amendment, the sufficiency of the showing underlying the issuance of a search warrant requires "not a prima facie showing" but only a "probability." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). As applied to the facts before us, the issuing judge was required to determine that the illegal activity, contraband, or evidence of the same was "probably" on the premises described in the warrant, not that they were certainly there.

The affidavit cited above stated that Matthews had been selling large quantities of methamphetamine for over three years, that the "source" had purchased drugs regularly from Matthews at the described premises, that the source had seen Matthews sell quantities of methamphetamine to other persons at the premises, that Matthews supported himself by the sale of methamphetamine, and was running an illegal business from his home at that address. On first reading, this information would certainly seem to support a probability that a search warrant would reveal drugs and evidence of drug dealing at the premises. The Supreme Court has advised repeatedly that "in dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent

men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). However, appellant raises nonfrivolous questions as to the legal sufficiency of the affidavit upon which the Superior Court judge acted. More specifically, he contends that the factual basis of the affidavit is "stale" and that the affidavit does not reflect sufficient indicia of reliability on the part of the source.

Appellant argues that so far as appears from the affidavit, the affiant's information may have been out of date. He contends that the source, even if truthful, may have bought methamphetamines as much as three years before the issuance of the warrant and that therefore, the affidavit is so stale as to raise no probability that evidence of drugs or a drug enterprise would still be present on the premises to be searched. As he points out, "a statement by an untested informant that three years earlier the defendant was involved in the drug trade carries almost no weight in the analysis of probable cause . . . ." *United States v. Huggins*, 299 F.3d 1039, 1053 (9th Cir. 2002) (Fletcher, J., concurring).

The United States contends that the quoted language from the Ninth Circuit does not describe this affidavit. In its view, the affidavit does not simply describe a single purchase years before the issuance of the warrant. Instead, while averring that the source was aware of "well more than three years" of drug sales activity by MM at the described premises, the affidavit also describes the source as having "bought large amounts of methamphetamines regularly from MM" at the described premises. It further averred that the source "had seen MM sell quantities of methamphetamine to other persons" at the premises.

But the fact remains that the affidavit does not state dates for any of the purchases. As we have stated:

> The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

*United States v. Bruner*, 657 F.2d 1278, 1298 (D.C. Cir. 1981) (quotation marks and citation omitted).

The government contends that the affidavit falls comfortably within the parameters of *Bruner*. That is, the affidavit, which speaks in the present tense, as well as describing activity relating back over three years, describes an ongoing enterprise in a specified location, not a nomadic one likely to have been moved or recently terminated.

The other matter of contention between the parties on the subject of probable cause is whether the affidavit demonstrates the reliability of the informant on whose information the officer's affidavit depends. In most cases, the reliability is demonstrated by the source's having provided accurate information in the past, often on "numerous occasions." *Id.* at 1296. There are, of course, other means of demonstrating the reliability, including the circumstance that the information given by the "reliable source" is against his penal interest. The United States contends that that should apply here. The appellant contends that it should not, because the portion of the informant's statements to the officer that are against its interest are not those upon which the probable cause determination rests. In the end, we need not determine the vexing issue of probable cause, as we conclude that even if probable cause is lacking, the

admission of the evidence was not reversible error because of the *Leon* exception, which we discuss below.

### B. The Leon *Exception*

The United States contends that even if we conclude that the affidavit is insufficient to have supported the issuance of a valid search warrant, we should nonetheless hold that the district court did not err in denying appellant's motion to exclude the fruits of the search under the "good faith" exception recognized in *United States v. Leon*, 468 U.S. 897 (1984). We agree. In *Leon*, the Court observed that "'[i]f the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)).

Therefore, in *Leon*, the High Court held that "when an officer acting with objective good faith has obtained a search warrant from a judge . . . and acted within its scope," the exclusionary rule should not be employed to "[p]enaliz[e] the officer for the [judge's] error." 468 U.S. at 921. Such an application of the exclusionary rule "cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* As in *Leon*, the officer here acted pursuant to a warrant, which "is a judicial mandate to an officer to conduct a search . . . ." *Id.* at 920 n.21. The officer had "a sworn duty to carry out" the provisions of the order. *Id.* Therefore, even if the affidavit was not sufficient to support the issuance of the warrant, we hold, as the Supreme Court did in *Leon*, that the evidence obtained in the search is not required to be excluded.

*C.  The* Franks *Hearing Argument*

Appellant argues that even under the *Leon* good faith exception, "[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).  Appellant therefore contends that the district court erred in denying his request for a *Franks* hearing. We disagree.

By its terms, the *Franks* opinion suggests the necessity for a hearing to determine the truth of the affidavit underlying the issuance of the warrant only where "the magistrate or judge, in issuing a warrant, was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  *Id.*  "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."  *Franks*, 438 U.S. at 171.

In this case, there is no record support for the proposition that the officer who obtained the warrant was guilty of any such false swearing or reckless disregard for the truth.  Appellant relies principally on what he views as the omission of details concerning the source's drug use and current charges.  However, even if appellant's factual assertions are correct, he presented nothing to the district court that would warrant a hearing to examine knowing false testimony or reckless disregard for the truth on the part of the officer.  The officer certainly alerted the issuing judge to the source's current legal difficulties and involvement with drugs.  Even without the "deference [paid] by reviewing courts" to a determination of probable cause, *see Gates*, 462 U.S. at 236 (quotation marks and citations omitted),

there is nothing to warrant a departure from the normal process of reviewing the sufficiency of an affidavit to support probable cause without an evidentiary hearing.

As both parties note, this circuit has never determined whether a district court's decision not to hold a *Franks* hearing is reviewed under the clearly erroneous or *de novo* standard of review. *See United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010). The United States suggests that we should review any necessary findings under a clearly erroneous standard and any conclusions of law under a *de novo* standard. However, it does not matter. As in *Becton*, we reiterate that "'[t]o mandate an evidentiary hearing,' the movant's attack on the affidavit supporting the warrant 'must be more than conclusory.'" *Id.* (quoting *Franks*, 438 U.S. at 171). Here, as in *Becton*, there is no more than a conclusory claim that the officer may have misled the issuing judge, and there is no support in the record for the necessity of holding an evidentiary hearing under *Franks*.

## CONCLUSION

To summarize, we hold that we need not decide the sufficiency of the affidavit because the exclusionary rule is inapplicable to the fruits of the search under *Leon*, 468 U.S. 897. We further conclude that the district court did not err in refusing to hold an evidentiary hearing under *Franks*, 438 U.S. 154. We therefore affirm the judgment below.

*So ordered.*